O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IJL DOMINICANA S.A., a corporation under the laws of the Dominican Republic; and RITA PAIEWONSKY, an individual,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>IT'S JUST LUNCH INTERNATIONAL, LLC, A Nevada limited liability company; DANIEL DOLAN, an individual; and IRENE LACOTA, an individual,<br><br>　　　　Defendants. | Case No. CV 08-5417-VAP (OPx)<br><br>**[Motion filed on August 18, 2008 ]**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART APPLICATION TO COMPEL ARBITRATION** |

　　Plaintiffs IJL Dominicana, S.A. and Rita Paiewonsky ("Plaintiffs") named It's Just Lunch International, LLC, Daniel Dolan, and Irene LaCota (collectively "IJL") in a Complaint filed August 18, 2008.

　　IJL filed an Application to Compel Arbitration ("Appl."); Plaintiffs' Opposition ("Opp'n") thereto, and

1  IJL's Reply were filed timely and the Court heard the
2  matter on January 26, 2009.  After reviewing and
3  considering all papers filed in support of, and in
4  opposition to, the Application, as well as the arguments
5  advanced by counsel at the hearing, the Court GRANTS IN
6  PART and DENIES IN PART the Application, severing
7  unconscionable portions but compelling arbitration.

## I.  THE ARBITRATION PROVISION

The Franchise Agreement signed by Plaintiffs and IJL contain what will be referred to as the "arbitration provision" under the heading "GOVERNING LAW, CONSENT TO JURISDICTION AND ARBITRATION":

> This Agreement shall be interpreted under the laws of the state of Nevada, U.S.A. and any dispute between the parties, whether arising under this Agreement or from any other aspect of the parties' relationship, shall be governed by and determined in accordance with the substantive laws of the State of Nevada, U.S.A., which laws shall prevail in the event of any conflict of law.  Any and all disputes arising out of this Agreement and the transactions contemplated herein between FRANCHISEE and IJL or IJL's affiliates shall be submitted for binding arbitration to be administered by the American Arbitration Association (the "AAA").  Such arbitration proceeding shall be conducted in English by a single arbitrator selected by the AAA, at a location to be determined by the arbitrator within twenty (20) miles of IJL's then current principal place of business, according to the international arbitration rules of the AAA and governed by the substantive laws of the State of Nevada, U.S.A., except for issues concerning the arbitration or arbitrability which shall

>be governed by the United States Federal Arbitration Act. The parties further agree that arbitration shall be conducted on an individual, not a class-wide, basis and that none of the parties hereto shall be entitled to consolidation of arbitration proceedings involving such parties with those of any third party, nor shall the arbitrator or any court be empowered to order such consolidation. In connection with such arbitration, the parties waive to the fullest extent permitted by law, any right to or claim for any punitive or exemplary damages against the other and agree that each party shall be limited to the recovery of any actual damages sustained by it.

(Lagarias Decl., Ex. 1 to Ex. N. 34-35.)

## II. LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), "upon being satisfied that the making of the agreement for arbitration . . . is not in issue the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. The district court must determine (1) whether a valid, enforceable arbitration agreement exists and (2) whether the claims asserted in the complaint are within the scope of the arbitration agreement. Id..; Howard Elec. & Mech. Co., Inc. v. Frank Briscoe Co., Inc., 754 F.2d 847, 849 (9th Cir. 1985); Chiron Corp. v. Ortho Diagnostic System, Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)("The court's role under the Act is therefore limited to determining (1) whether a valid agreement to

arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.")

The FAA requires that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Through the FAA, Congress created a liberal federal policy favoring arbitration agreements.  Perry v. Thomas, 482 U.S. 483, 489 (1987), quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983).

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . ." Moses, 460 U.S. at 24-25.  "The standard for demonstrating arbitrability is not high. . . . Such [arbitration] agreements are to be rigorously enforced." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999).  [Citations omitted.]

### III. DISCUSSION

Plaintiffs seek to avoid arbitration on the basis that the arbitration clause, in whole or in part, is unconscionable.  If the Court finds unconscionability, it

may either invalidate the arbitration clause as a whole or strike only those offending parts of the provision.

**A.   Unconscionability**

The Franchise Agreement requires disputes regarding arbitrability to be determined under the FAA.  "Because § 2 of the FAA provides that arbitration agreements are generally valid and enforceable, 'save upon such grounds as exist at law or in equity for the revocation of any contract,' we are required to turn to California law to address [plaintiffs'] arguments regarding the unconscionability of the arbitration provision."  Nagrampa v. MailCoups, Inc., 469 F.3d 1257, 1264-65 (9th Cir. 2006).  Under California law, the Court determines unconscionability by examining both procedural and substantive unconscionability.  Id. at 1280.

   **1.   Procedural unconscionability**

To determine procedural unconscionability the Court must examine surprise and oppression.  "Oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice . . . .  Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position."  Crippen v. Central Valley RV Outlet, Inc., 124 Cal. App. 4th 1159, 1165 (2004).

### a. Surprise

Here, as in Nagrampa, the Franchise Agreement was lengthy. Nevertheless, the arbitration provision appears in the index to the Franchise Agreement and the arbitration provision itself is set out in the same manner as all other provisions. Although Plaintiff claims she was surprised by the arbitration requirement imposed by the agreement, she previously represented she read the entire Franchise Agreement. (Declaration of Rita Paiewonsky ("Paiewonsky Decl.") ¶ 9; LaCota Decl. Exs. K, L, M, N.) see Nagrampa, 469 F. 3d at 1282, 1283. Accordingly, surprise was not present here. See id. at 1284.

### b. Oppression

Franchise agreements share some aspects of consumer contracts, where there are inequalities of bargaining power. In Nagrampa, the Ninth Circuit applied California law on this issue; the plaintiff in that case was a college-educated first-time business owner who had been unable to negotiate successfully any terms of a lengthy franchise agreement for a franchised coupon business. Nagrampa, 469 F.3d at 1283 (" . . .[franchisor] had overwhelming bargaining power, drafted the contract, and presented it to Nagrampa on a take-it-or-leave-it basis . . . ."). The Nagrampa court found this evidence of unconsionability" minimal" but sufficient to require

1 examination of substantive unconscionability. Id. at
2 1284.

4     Here, as in Nagrampa, the Franchise Agreement is a
5 form contract and there is only scant evidence that the
6 arbitration provision was subject to negotiation,
7 consisting of electronic communications adduced by IJL
8 indicating discussions over fee structure and the scope
9 of territory. (See, e.g., LaCota Decl. Exs. C, F, G, H.)

11     The parties differ on whether the Franchise Agreement
12 is an adhesion contract. According to Flores v.
13 Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 853
14 (2001), an adhesion contract is "a standardized contract,
15 imposed upon the subscribing party without an opportunity
16 to negotiate the terms." The Franchise Agreement is such
17 a contract. Although oppression does not always result
18 from the use of adhesion contracts, the facts here are
19 sufficiently similar to those in Nagrampa to merit a
20 finding of oppression. See Nagrampa, 469 F.3d at 1284;
21 Crippen, 124 Cal. App. 4th 1159, 1167 (upholding
22 enforcement of arbitration provision in form contract as
23 concepts of adhesion and oppression are related but not
24 coextensive.)[1]

---

[1]   Plaintiffs' arguments about the language of the contract (i.e. English versus Spanish) are unavailing. Plaintiffs argue the Franchise Agreement is oppressive because it was never provided in Spanish, without
(continued...)

7

Here, as in Nagrampa, "evidence of procedural unconscionability appears minimal," although it is sufficient to require examination of substantive unconscionability.  See Nagrampa, 469 F.3d at 1284.

### 2.  Substantive unconscionability

A provision is substantively unconscionable if it demonstrates "a lack of mutuality."  Nagrampa, 469 F. 3d 1257.

#### a.  Punitive damages bar

The Franchise Agreement contains two waivers of punitive damages.  The first punitive damages waiver appears at paragraph 18(B), "GOVERNING LAW, CONSENT TO JURISDICTION AND ARBITRATION," and waives "any punitive or exemplary damages" for both parties, for all claims, "to the fullest extent permitted by law."  The second punitive damages waiver appears at paragraph 18(D),

---

[1](...continued)
alleging IJL promised to provide any materials in Spanish, or that IJL made efforts to exploit any language differences, for example by forbidding interpretation.  Plaintiffs also fail to account for the fact that any trial in this matter will proceed in English.

In addition, IJL produced electronic mail messages from Paiewonsky in very good, although not perfect, business English regarding the Franchise Agreement.  (See, e.g., LaCota Decl. Ex. C.)  These show Paiewonsky took time to review and understand the contract including consultation with her brother whose English abilities were superior to her own.  This undermines a showing of surprise, because it shows Paiewonsky was well aware of the provisions in the Agreement, contrary to the suggestion IJL hid terms from her.

8

1  "WAIVER OF PUNITIVE DAMAGES AND JURY TRIAL," and waives
2  punitive damages to the extent permitted by law,
3  excluding from its scope those claims based on
4  "FRANCHISEE'S obligation to indemnify IJL under Section
5  17" as well as claims brought "against FRANCHISEE for
6  FRANCHISEE's unauthorized use of the Marks or
7  unauthorized disclosure of any Confidential Information."

"WAIVER OF PUNITIVE DAMAGES AND JURY TRIAL," and waives punitive damages to the extent permitted by law, excluding from its scope those claims based on "FRANCHISEE'S obligation to indemnify IJL under Section 17" as well as claims brought "against FRANCHISEE for FRANCHISEE's unauthorized use of the Marks or unauthorized disclosure of any Confidential Information."

Only the language in paragraph 18(B) is now properly before the Court because the Court examines the arbitration provision itself for unconscionability, rather than the entire Franchise Agreement. See Nagrampa, 469 F. 3d at 1267.

IJL's principal argument against the punitive damages waiver is that the Franchise Agreement is not a contract of adhesion. (Reply 10-13). This is unpersuasive as the Court has already determined the Franchise Agreement is an adhesion contract. The Court finds the punitive damages waiver substantively unconscionable as it lacks mutuality; a franchisor is more likely to be defending against punitive damages than seeking them.[2] See Nagrampa, 469 F.3d at 1257; Woodside Homes of Cal., Inc. v. Superior Court, 107 Cal. App. 4th 723, 734-35 n. 16.

---

[2] The Court does not rule on the conscionability of paragraph 18(D).

9

          **b.   Class action or consolidated action bar**

The Franchise Agreement arbitration clause states the arbitration shall be conducted "on an individual, not a class-wide, basis . . . " and blocks consolidated arbitration. Although IJL claims the provision regarding class actions is irrelevant as Plaintiffs have not brought a class action, and no other party has an arbitration provision in their contract, the option of consolidated arbitration has not been unequivocally rejected by the parties. (See Reply 14.) Accordingly, the Court examines the bar on consolidated or class arbitration for substantive unconscionability.

The bar on class action or consolidated arbitration is unconscionable; it is one-sided, imposing a liability on franchisees only, rather than on the franchisor. California courts have found class-action waivers unconscionable in adhesion consumer contracts. See Discover Bank v. Superior Court, 36 Cal. 4th 148, 162 (2005); Independent Association of Mailbox Center Owners v. Superior Court, 133 Cal. App. 4th 369 at 407-11. Their reasoning is persuasive here, where the ban imposes a burden on franchisees but little inconvenience on the franchisor.

        **c.    Statute of limitations restriction**

Plaintiffs ask the Court to find unconscionable the Franchise Agreement language at paragraph 18(E), which contractually limits the statute of limitations to one year for all claims except those against a franchisee for failure to pay amounts owed to IJL. This provision is not before the Court because it appears outside the arbitration provision of paragraph 18(B). See Nagrampa, 469 F. 3d at 1267. The Court does, however, take this language into account below, when it looks beyond the arbitration provision to determine whether the Franchise Agreement is so permeated with unconscionability that severing certain portions would be inappropriate.

**B.    Remedy**

The Court may (1) sever unconscionable provisions or, (2) if unconscionability 'permeates' the contract, strike the arbitration provision as a whole. (Reply 14 citing Armendariz v. Foundation Health Psychare Services, Inc., 24 Cal. 4th 83, 122 (2000).)

The Court severs the substantively unconscionable portions of the arbitration provision: (1) the bar on punitive or exemplary damages; (2) the bar on class-wide or consolidated arbitration.

Striking the entire arbitration provision is not appropriate because Plaintiffs failed to show the Franchise Agreement was permeated with unconscionability. They made a weaker showing than did the plaintiff in <u>Nagrampa</u>, where the Ninth Circuit found there was "no single provision [we] can strike or restrict in order to remove the unconscionable tint from the agreement." 469 F. 3d at 1293.

There, the franchisor reserved for itself access to the courts for intellectual property matters while relegating all of Nagrampa's claims to arbitration. <u>Id.</u> at 1285. Likewise, at paragraph 18(B) of the Franchise Agreement, IJL reserves for itself judicial adjudication of certain claims.

Plaintiffs also direct the Court's attention to the statute of limitations restriction at paragraph 18(E), which imposes a one-year statute of limitations on all claims save those arising from a franchisee's failure to pay claims. This limits Plaintiffs' ability to bring claims under the CFIL and the UCL; as it limits only some of IJL's claims, but all of Plaintiffs', it clearly favors the franchisor over the franchisee. (Opp'n 16-17.)

1    In <u>Nagrampa</u>, however, the franchisor sought to
2 enforce a choice of forum provision that the franchisor
3 had previously listed as likely unenforceable under
4 California law in the UFOC. <u>Id.</u> at 1290. Accordingly,
5 Nagrampa, a California resident, had justifiably believed
6 she could seek resolution of her complaint in California
7 and was unfairly surprised to learn she would have to
8 participate in arbitration in Boston, Massachussets, just
9 miles from the headquarters of the franchisor. <u>Id.</u> at
10 1285-86, 1289. No comparable shenanigans are at foot
11 here. Whether the arbitration provision is enforced or
12 not, the Plaintiffs, from the Dominican Republic, will
13 win or lose their case in Southern California.[3]

15    Although the provisions of paragraphs 18(D) and (E),
16 discussed above, are likely one-sided, they do not show
17 the Franchise Agreement as a whole is permeated with
18 unconscionability. The <u>Nagrampa</u> court described
19 permeation as that state in which no single provision can
20 be struck to create an acceptable contract. <u>See</u>
21 <u>Nagrampa</u>, 469 F.3d at 1293. If the arbitrator determines
22 paragraphs 18(D) and (E) unconscionable, the arbitrator
23 is free to sever them.

---

[3]The arbitration provision provides for arbitration within 20 miles of IJL's headquarters. The Second Amended Complaint at paragraph 1 lists Palm Desert as IJL's principal place of business.

**IV. CONCLUSION**

The Court GRANTS IN PART and DENIES IN PART the Application to Compel Arbitration. It severs the following language from paragraph 18(B):

> The parties further agree that arbitration shall be conducted on an individual, not a class-wide, basis and that none of the parties hereto shall be entitled to consolidation of arbitration proceedings involving such parties with those of any third party, nor shall the arbitrator or any court be empowered to order such consolidation. In connection with such arbitration, the parties waive to the fullest extent permitted by law, any right to or claim for any punitive, or exemplary damages against the other and agree that each party shall be limited to the recovery of any actual damages sustained by it.

The Court refers the case to arbitration.

DATED: February 6, 2009

_____
VIRGINIA A. PHILLIPS
U.S. DISTRICT JUDGE